This morning we will be hearing two cases for oral argument, that is Tracey Brown v. Attorney General for the State of Nevada and Alvidrez-Quesada v. Bondi. So I'd like to start with Tracey Brown. Thank you. And I want to let you know each side will have 10 minutes. If appellants would like to reserve any time for rebuttal, please be aware that you are responsible for your own time, but I do want to know if you'd like to reserve any. Good morning, Your Honors. My name is Mark Ebert, and I am representing Mr. Tracey Brown, and I would like to reserve two minutes for rebuttal if possible. I'd like to start with the three jurors that the defense asked to be removed from the jury because the district court failed to even mention one of the three jurors in its ruling, and it also didn't even mention the defense's request to remove them. And with respect to my opponent, I believe that the State's brief unfairly minimizes their testimony. I will not talk about juror number two because I talked about it a lot in the briefs, and even the prosecutor admitted that there was prejudice as to that juror and suggested that she should be removed from the... I don't think he admitted prejudice. Because I think he gave you the option to have number two removed, and you did not. Well, what he said was, quote, with the exception of juror number two, the other was not the type that would rise to the level of prejudice. And he said it would be wise to remove that juror from the jury. And, counsel, were you given that option to remove that juror? Yes. Well, I wasn't the lawyer. And he was given the option, but it wasn't much of an option because he was given the option to remove two of the three jurors that were tainted. And so no matter what he chose, at least one tainted juror would remain on the jury, and his black letter law from the Supreme Court that if even one tainted juror is on the jury, that violates the due process of the defendant. So no matter what he chose, his client's due process rights would have been violated. But juror number 13 has been a little bit underestimated. He heard the friend talking loud enough for everyone to hear about why Gallen had said what... Why she had said what she said on the witness stand. He specifically said that she was talking about the case, which is one of the standards for putting the burden on the prosecution. And he said that she was doing it purposely, which was, again, one of the standards. And juror number four said that that juror 13 looked shocked about it. And several jurors said that other jurors also said that they looked shocked or were shocked. And juror number four heard Gallen's friend tell them to tell them, meaning the jurors in the elevator, to look at the tapes, just look at the tapes. That says everything. And juror number four also testified saying, are we okay? Is that okay? Should we report it? And he said that everyone, the jurors, discussed it out there, meaning outside of the elevators. He sent a text message to the bailiff reporting it. They all had the bailiff's phone number. But only after juror number two was already on the witness stand three days after the  And none of the others even reported it at all. Even though they were still in the courthouse and even though they all had the bailiff's phone number. But neither Ms. Gallen nor her companion mentioned anything that the jury hadn't already seen in the courtroom. Correct? Well, they did two things. One is, they discussed the case, which is one of the factors that leads to putting the burden on the prosecution, the burden to prove beyond a reasonable doubt that there's no prejudice. No, no, no. That's not Brick v. Amundson. It's not beyond a reasonable doubt. That is what the trial court said, and that is what Remmer says. He was in error, wasn't he, under the law under Brick v. Abramson, is it? The trial judge said something, but he was in error. Respectfully, I don't believe that was error under Remmer or under the law. Under Brick? That's the one we have to apply. Well, yes, that applies. But the standard that the trial court says and what is the law under Remmer and under Meyer is that the prosecution has the burden beyond a reasonable doubt to prove that there's no prejudice. And yes — No, to prove the facts of the indictment. But under Brick v. Abramson, the question is whether the trial error prejudiced the outcome of the case. And that is not determined on a beyond a reasonable doubt basis, but on a preponderance of the evidence basis, isn't it? That is a habeas standard. Yes. That is correct, Your Honor. But that is not the standard — But that's what we have here, isn't it? That's not the standard that applies on appeal. And that was the correct standard that the district court and the court — the Nevada Supreme Court was required to apply. But this is a habeas, isn't it? Yes, this is habeas. The district court found that — the trial court found that there was a deliberate attempt to influence the jury, and the jurors committed misconduct. And that's jury tampering. And I respectfully disagree with my opponent on that. And that is why both the Nevada Supreme Court and the district court violated clearly established Supreme Court precedent by putting the burden on the defendant, Mr. Brown, to show prejudice when again, as the trial court judge said, the proper legal standard was what I just said. And I respectfully submit that that is what they should have applied at that time. And that is putting the wrong burden of proof. And that's where it went wrong, Your Honors, at the trial court level. The hearing that the trial court judge held was proper, but the purpose of the hearing was not just to ask the jurors if they were biased. Most people like to think that they're not biased, but that alone can't be determinative. The court has to consider objective facts. At least three jurors were subjected to intentional efforts to influence the verdict. Doesn't the Dutkill case, though, hold that courts should presume that jurors will disregard ex parte contacts like the one that happened in the elevator? Well, first of all, the trial court judge recognized the problem and offered to replace the jurors to resolve it, to solve it. But because she only had two alternate jurors, she could only replace two of them without declaring a mistrial. But that's not an adequate reason for denying a mistrial. The black letter law says that if you leave one biased juror on, that denies due process. Well, if she was convinced that the defendant had been prejudiced and she only had two alternate jurors and there were three that had caused trouble, she would have granted the mistrial. But what she did is she gave the defense counsel the option to either – I think she was being generous, saying we have two here, do you want these two instead? So I don't think she thought there was prejudice. She didn't even rule on the other two. She was given three, all three of whom met the standard. They were subjected to what she said was an intentional attempt to influence the jury. There was – and she said that there was juror misconduct. At least six of the eight did not report to her what had happened. And they were convinced that it was an attempt to influence their verdict. And they didn't report it. And all three of those, that's really not, I don't think, in question, but if you look at their testimony. And she just didn't want to have a mistrial. I think that's what happened. Well, it's beyond that. I mean, the judge – this is an emotional mistrial, and you say that habeas required a mistrial to be granted. But she says, as you know, we have a lot to look at the totality. And I think looking at the totality, the other evidence that didn't relate to Ms. Gallin, all of the testimony of the witnesses and the victims in this case, and the surveillance videos that were shown and everything else, setting aside Ms. Gallin's testimony, you know, there was enough evidence. They didn't even really need to call Ms. Gallin in this particular case. So to me, I think I could say beyond a reasonable doubt that it didn't have an impact. Respectfully, Your Honor, there were seven robberies on five different days. Two of the robberies, there was not a single witness who identified Mr. Brown either in the photo lineup or at trial as the masked robber who robbed them. In two of the other robberies, they identified him in the photo lineup but were unable to identify him at trial. In the three robberies that Ms. Gallin testified to, and she only testified to three, there was one witness who couldn't identify him in either the photo lineup or at trial, one who gave a mixed identification, and one who did identify him in both. So in other words, it was a reasonable finding of fact. Yeah. It's an unreasonable finding of fact in addition to a violation of clearly established Supreme Court law. Counsel? And I can't help noticing that the... Counsel? Yeah, my time is up. I do want to ask you one question and then I'll give you a minute back on rebuttal. Do you agree with us that Brecht governs our review of this case? Brecht governs it, but if the wrong standard was applied at the trial court level and at the district court level, then there's still the issue of whether there was a violation of clearly established Supreme Court law. Okay. Thank you. Thank you. Hi. Good morning. Good morning. Can I just have a moment to set up, please?  Thank you. Good morning, Your Honors, and may it please the Court. My name is Elsa Felgar. I'm a Deputy Attorney General for the State of Nevada, and I represent respondents in this matter. Respondents ask that this Court affirm the federal district court's decision and hold that Brown is not entitled to federal habeas relief. In one of this Court's most recent cases, Von Tobel, this Court determined that the test that the Nevada Supreme Court used in Meyer in cases of contact between a juror and third party is not contrary to or an unreasonable application of Remmer-Maddox framework. Particularly important is that prejudice to the defendant in Meyer depends on whether the extrinsic influence was egregious or not. If egregious, then it is presumed. If it is not, then the defendant has the burden to show a reasonable probability or likelihood that the juror misconduct affected the verdict. This Court concluded that this burden-shifting framework was consistent with the Remmer-Maddox framework. Here, the Nevada Supreme Court relied on Meyer to determine that, one, there was misconduct, but two, Brown did not show prejudice. In placing that burden on Brown to show prejudice, the Nevada Supreme Court determined that the The Court concluded that most jurors didn't remember what was said or only remembered the witnesses talking about something on Gallen's head. And the information was But that is very important to the defense of identity, is it not? Because if the friend says in the elevator, you were wearing a silly thing on your head, and she's pointing to Gallen as the person who was wearing that, and in the video, if she's wearing that and the defendant is acting, then that bolsters her testimony as to identity of the defendant as the culprit. Doesn't that affect, doesn't that taint the jury verdict? In this case, no, Your Honor, and that's because Ms. Gallen had already identified herself in that video. So when the friend was saying that was silly, what you were wearing on your head Corroboration of Gallen. That's corroboration of a witness outside of court by a person who was not cross-examined. That is true, Your Honor. However, in this case, it's not egregious because Gallen had already identified herself. So the jurors already knew that that was Gallen in the video. But she was state's evidence. She pled guilty and was testifying pursuant to a deal, right? That's correct. And that goes to her credibility. That's correct. I just want to point out that the defense was able to cross-examine Gallen. I understand that it wasn't her friend, but was able to cross-examine Gallen and thoroughly cross-examined her on her guilty plea agreement. And Gallen, from the record, seemed to be kind of a hostile witness and a little bit of a difficult witness. But the defense was able to talk about the guilty plea agreement and what was involved in that. And Ms. Filger, what do you make of the argument that the court's giving the opportunity to replace one of the alternates is just not enough, because there was three tainted jurors at least? What do you make of that? Well, I would argue that there's only one real tainted juror, and there's really one issue with one juror, and that's juror number two, because the juror mentioned statements about the truthfulness of what Ms. Gallen was testifying to. And so really, the only issue is whether or not that juror should have been removed. And the court gave the defense that option, and the defense chose not to. So even if we have three, the defense claims that there are three jurors, our argument is that really, there was one that really spoke to the most, the worst issue here regarding the three jurors. The other two were just talking about what was on the surveillance video. You just have to look at the video. Well, the jurors were going to do that, and they had already done that because they had multiple witnesses talking about the video. And multiple jurors said, yes, that is the robber on the video, and some witnesses were able to identify him in court, and others were able to identify him in a photographic  And I just want to mention that I did mention all the jurors in my brief. I believe it's pages 9 through 13. I did mention 4 and 12, or excuse me, 4 and 13 in particular. The court concluded, so the Nevada Supreme Court concluded that most jurors didn't know what was said, something on Gallin's head, the information was vague and cumulative of the video that was already entered into evidence, and not relevant to any material issue. Most importantly, when canvassed, all jurors stated that the misconduct would not affect their deliberations. And I think that's one of the most important points here, is that we have the opportunity to know what the jurors not thought, but what, if anything, affected the jurors following the encounter. And every single juror said, even juror number two said that it would not affect their deliberations. And the court presumed that to be true. The court believed that the jurors were telling the truth, and also gave the ability or, excuse me, gave an extra instruction, I believe it was Instruction 11, that talked about any third-party contact, and that those, that contact is to be disregarded. And the jurors were presumed to follow those instructions, including Instruction 11. This Court has held that egregious forms of juror misconduct rise to the level of jury tampering. Now, that's the Remer presumption applies if the case involves jury tampering. However, it needs to amount to tampering. And here, it did not amount to tampering. The conduct did not trigger, one, did not amount to tampering, and two, did not trigger the presumption that is required when we look at juror misconduct cases. Counsel, do you agree that Brecht is the case that we need to keep in mind here? That kind of tells us how we need to go? Yes, Your Honor. If this court finds that there was a constitutional error, the court must review for harmless error, and that would be under Brecht v. Abrahamson, yes, if the court finds that there was an error. And are you suggesting that the court find that there was not an error? That there was not an error because the Nevada Supreme Court clearly applied, clearly established federal law, the Remer Maddox framework in Meyer, and properly applied Meyer, which this court has already determined, as I previously said, in Vontobel. And then we're also supposed to presume that all of the state court factual findings are correct. That's correct. That's correct. If this court does not have any further questions, then I'd ask, I'm sorry, I'd ask that this court affirm the federal district court's decision and find that Brown is not entitled to federal habeas relief. Okay. Thank you. Thank you. Mr. Ebert, I said I'd put one minute on since I asked you a question. I figured in a minute. Yeah. Number one, jury tampering is egregious under Remer, Godoy, and Meyer. Number two, Brecht says that error is not harmless if it had a substantial and injurious effect or influence on the jury's verdict at trial. That applies to effect on the jury's verdict, whether it's due to application of the wrong legal standard or determination of the facts due to the wrong application, the application of the wrong legal standard, and I would respectfully suggest that that would apply either way here. Third, the witness, the person in the elevator was vouching for a rather sketchy government witness. Fourth, the state's factual findings are assumed to be correct, and the government, excuse me, the judges, and they support our side. The finding of an intentional effort to sway the jury and jury misconduct, and I'm not going to get to the rest of what I had to say. Thank you for the extra minute.  You're welcome. Thank you to both counsel. This matter is now submitted.
judges: BEA, ALBA, Brown